IN THE CASE OF


UNITED STATES, Appellant/Cross-Appellee

v.

Mario L. CARTER, Airman First Class
U.S. Air Force, Appellee/Cross-Appellant

No. 04-5002

Crim. App. No. 35027

United States Court of Appeals for the Armed Forces

Argued December 7, 2004

Decided April 18, 2005

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, C.J., and BAKER and ERDMANN, J.J., joined. CRAWFORD,
J., filed a separate dissenting opinion.

Counsel

For Appellee/Cross-Appellant: Lieutenant Colonel Robin S. Wink
    (argued); Colonel Beverly B. Knott, Lieutenant Colonel
    Carlos L. McDade, Major Terry L. McElyea, and Captain
    Jennifer K. Martwick (on brief).

For Appellant/Cross-Appellee: Major James K. Floyd (argued);
    Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs,
    Lieutenant Colonel Gary F. Spencer, and Captain C. Taylor
    Smith (on brief).


Military Judge: Steven A. Hatfield


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Carter, No. 04-5002/AF

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer members, Appellee/Cross-Appellant (Appellee) was convicted, pursuant to his pleas, of using marijuana, distributing marijuana, distributing cocaine, introducing marijuana onto an installation with intent to distribute, and introducing cocaine onto an installation with intent to distribute, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). He was also convicted, contrary to his plea, of indecent assault, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). He was sentenced to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence. In an unpublished opinion, the United States Air Force Court of Criminal Appeals set aside the findings on the indecent assault charge, affirmed the remaining findings, and set aside the sentence. The court authorized a rehearing on the indecent assault charge and on the sentence. United States v. Carter, ACM 35027 (A.F. Ct. Crim. App. Oct. 17, 2003).

The Judge Advocate General of the Air Force certified the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL
> APPEALS ERRED IN FINDING PLAIN ERROR WHEN

2

> TRIAL COUNSEL ARGUED THAT THE EVIDENCE WAS
> "UNCONTROVERTED" AND "UNCONTRADICTED."

On Appellee's cross-petition, we granted review of the following issue:

> WHETHER APPELLEE/CROSS-APPELLANT WAS DENIED
> EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS
> DEFENSE COUNSEL FAILED TO OBJECT TO TRIAL
> COUNSEL'S REPEATED ARGUMENT THAT THE
> EVIDENCE WAS "UNCONTROVERTED" AND
> "UNCONTRADICTED" AND TOLD THE COURT MEMBERS
> THAT APPELLANT HAD AN "ABSOLUTE RIGHT NOT TO
> TESTIFY AND INCRIMINATE HIMSELF."

We affirm the decision of the court below, which concluded that the statements by trial counsel constituted prejudicial error under the circumstances of this case. In view of our decision on the certified issue, we need not reach the granted issue.

## I. BACKGROUND

At trial, Appellee contested the indecent assault charge. The prosecution presented one witness in support of the charge, the alleged victim, Senior Airman (SrA) D. According to SrA D's testimony, the following transpired early one morning when she was in her dorm room, watching a movie. Appellee, who was a close friend, knocked on her door. She was alone at the time, and she invited him into the room to watch the movie. At one point, SrA D, who was lying on her bed, told Appellee that he could not sit on her bed, so he sat on the floor. Subsequently, Appellee touched SrA D's hand, but she moved it away and told

3

him she was "with someone." Appellee persisted by rubbing her arm. She told him "no" and said that he should stop. Later, he rubbed her leg. SrA D told him to "chill out." Instead, Appellee got on top of her, and she told him to get off and attempted to force him off by rolling over. While the two wrestled, Appellee pulled her shorts down, lifted her shirt and bra, and put his mouth on her breast. She told Appellee "no" several times over the course of the struggle. After pushing Appellee away, she told him to leave. When he refused, she called the law enforcement desk, but Appellee disconnected the phone after it rang only once. Appellee then walked to the door, and SrA D pushed him out.

SrA D also testified that she did not yell for help and that she did not injure Appellee during the struggle. She reported the incident later the same morning.

On cross-examination, SrA D acknowledged that she had engaged in consensual sexual intercourse with Appellee several months earlier. Upon further questioning during redirect examination, she stated that she had initiated the consensual encounter.

The Government did not present any other witnesses or evidence regarding the indecent assault charge. After the Government rested, defense counsel announced in open court that the defense would call one witness. The Government then

4

requested an Article 39(a) session. See Article 39(a), UCMJ, §

839(a)(2000). During the session, from which the members were

absent, the Government asserted that the anticipated testimony

of the defense witness, a friend of the victim, would constitute

inadmissible hearsay. Instead of contesting the Government's

position, defense counsel stated, "Your Honor, rather than fight

this out, we're going to withdraw the witness and therefore

rest." When the members returned to the courtroom, the military

judge told the defense counsel to proceed. The defense counsel

responded, "At this time the defense rests." Appellee did not

testify, and the defense did not submit any evidence or call any

witnesses.

During closing arguments, the trial counsel repeatedly

characterized the evidence concerning the indecent assault as

"uncontroverted" and "uncontradicted":

> The facts of this case are clear. They are
> uncontroverted, uncontradicted. No opposing
> evidence or information. The evidence you
> have before you is the testimony of [SrA D].
> She sat here on this witness stand. She
> swore an oath to tell the truth and she told
> you all what happened on 24 December 2000.
> And the reason that her testimony is
> uncontroverted is because she told you what
> happened and that is what happened.
>
> . . . .
>
> Let's talk about those elements [of indecent
> assault] just very briefly because they are
> easily satisfied by the uncontradicted
> uncontroverted evidence in this case.

> . . . .
>
> . . . [SrA D's version of events] is exactly
> what happened in this case. That is the
> uncontroverted testimony before you. That
> is the evidence that you have. Why?
> Because that is exactly what happened.
>
> . . . .
>
> The elements [of indecent assault] are
> satisfied based on the uncontroverted
> evidence.
>
> . . . .
>
> . . . The government believes . . . that
> those things occurred, that they are
> uncontradicted in this case and that you
> should find him guilty of the charge as
> specified.

Defense counsel, who did not object during trial counsel's closing argument, responded during the defense's closing argument:

> Trial counsel talked about there is no
> opposing story. Well, my client,
> [Appellee], has a right, an absolute right
> not to testify and incriminate himself. And
> that should be made entirely clear. So we
> have her story. The facts still do not add
> up as much as trial counsel would like you
> to believe that.

Following defense counsel's closing argument, the military judge gave the following instruction to the members:

> I will point out that the accused has an
> absolute right to remain silent. You will
> not draw any adverse inference to the
> accused from the fact he did not testify as

6

> a witness.  You must disregard the fact that
> the accused has not testified.

Trial counsel then presented a rebuttal argument, in which he

again characterized the facts as "uncontradicted":

> Along those lines, members, all I would say
> to you is [the military judge's instruction]
> is absolutely correct, but what you have to
> deal with is the evidence that is before
> you.  And the government doesn't change its
> position one bit about the fact that what
> you have are uncontradicted facts.
>
> You have uncontradicted facts that are the
> basic foundation of the case.
>
> . . . .
>
> The facts in this case are clear, the
> uncontradicted testimony.

## II. DISCUSSION

### A. THE PRIVILEGE AGAINST SELF-INCRIMINATION

Members of the armed forces, like their civilian

counterparts, may not be compelled to incriminate themselves in

a criminal case.  U.S. Const. amend. V; Article 31(a), UCMJ, 10

U.S.C. § 831(a)(2000).  The privilege against self-incrimination

provides an accused with the right to not testify, and precludes

"comment by the prosecution on the accused's silence."  Griffin

v. California, 380 U.S. 609, 615 (1965).

In United States v. Mobley, 31 M.J. 273, 279 (C.M.A. 1990),

we observed that "[i]t is black letter law that a trial counsel

may not comment directly, indirectly, or by innuendo, on the

fact that an accused did not testify in his defense." As noted in the Discussion accompanying Rule for Court-Martial (R.C.M.) 919(b) in the Manual for Courts-Martial, United States (2002 ed.)(MCM): "Trial counsel may not comment on the accused's exercise of the right against self-incrimination . . . . Trial counsel may not argue that the prosecution's evidence is unrebutted if the only rebuttal could come from the accused." Although not binding, the Discussion reflects applicable judicial precedent. See MCM, Analysis of R.C.M., app. 21 at A21-66.

Not every prosecutorial comment on the failure of an accused to testify is impermissible. As the Second Circuit has noted:

> It is well established that the government may comment on the failure of a defendant to refute government evidence or to support his own claims. "A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as comment on the failure of the accused to testify."

United States v. Coven, 662 F.2d 162, 171 (2d Cir. 1981)(citations omitted), quoted in United States v. Webb, 38 M.J. 62, 66 (C.M.A. 1993). A prosecutorial comment must be examined in light of its context within the entire court-martial. See, e.g., United States v. Baer, 53 M.J. 235, 238

United States v. Carter, No. 04-5002/AF

(C.A.A.F. 2000).  Under the "invited response" or "invited reply" doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense.  See, e.g., United States v. Gilley, 56 M.J. 113, 120-21 (C.A.A.F. 2001) (citing United States v. Robinson, 485 U.S. 25, 32 (1988)).

B. ANALYSIS

The certified issue requires us to determine whether trial counsel's statements amounted to an impermissible reference to Appellee's Fifth Amendment right to not testify, or whether the statements were a fair response to the defense's theory of the case.  In the absence of objection, we review for plain error. R.C.M. 919(c); Gilley, 56 M.J. at 123.  Appellee must show that there was error, that the error was plain, and that the error materially prejudiced his substantial rights.  See United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998).  Once Appellee meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt.  United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F. 1999).

The charged act involved two adults alone in a private room in the early hours of the morning.  There were no screams, no injuries, no physical evidence of a struggle, and no other

witnesses.  Only Appellee possessed information to contradict the Government's sole witness.  Under these circumstances, prosecutorial comment on the failure to present contradicting evidence constitutes an impermissible reference to Appellee's exercise of the privilege against self-incrimination unless the comment constituted a fair response to a claim made by the defense.  See Robinson, 485 U.S. at 32-34.

The Government argues that there was no Fifth Amendment violation because trial counsel's comments responded fairly to the defense theory that SrA D was not a credible witness.  See also Carter, ACM 35027, slip op. at 8-9 (Stone, J., concurring and dissenting).  The record, however, reflects that trial counsel's comments were not tailored to address any weaknesses in the defense's cross-examination of SrA D or the defense's efforts to impeach her.  Instead, trial counsel broadly described the facts and evidence as "uncontradicted" and "uncontroverted."  See Lent v. Wells, 861 F.2d 972, 975 (6th Cir. 1988) (rejecting the State's argument that the prosecutor's comments were a response to defense counsel's opening statement when the remarks were not tailored to address that statement).

Credibility is at issue in nearly all cases involving witness testimony.  In the present case, the prosecution's argument repeatedly drew the members' attention to the fact that Appellee did not testify.  The comments were not tailored to the

defense credibility argument.  If we were to hold that any defense challenge to a witness's credibility opens the door to such prosecutorial comments, the "invited reply" doctrine would swallow the protections guaranteed by the Fifth Amendment.

The improper comments in this case were not isolated or a "slip of the tongue."  See United States v. Moore, 917 F.2d 215, 225 (6th Cir. 1990) (factoring in the isolated nature of the prosecutorial comments when determining the context of the comments); J.E. Evans, Annotation, "Comment or Argument by Court or Counsel That Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify," 14 A.L.R. 3d 723 § 6 (1967 Supp. 2005) (summarizing case law viewing repetition of the comment as an indication of whether the comment was improper); United States v. Wagner, 884 F.2d 1090, 1099 (8th Cir. 1989) (finding no Fifth Amendment violation when the prosecutor inadvertently stated the appellant's name instead of his codefendants' names).  Trial counsel used the words "uncontroverted" and "uncontradicted" repeatedly -- eleven times in all -- such that the reference to Appellee's decision not to testify became a centerpiece of the closing argument.  Even after the military judge instructed the members not to draw any adverse inferences from Appellee's silence, trial counsel persisted in characterizing the evidence

as "uncontradicted" three more times.  As the Court of Criminal

Appeals concluded:

> [T]he sheer number of times he mentioned the words was of such a character that the members would naturally and necessarily take it as [comment on Appellee's failure to testify].  Additionally, the fact that he mentioned the words so often makes it difficult to conclude that the comments were isolated.

Carter, ACM 35027, slip op. at 5.

Considering the statements in context, trial counsel

improperly implied that Appellee had an obligation to produce

evidence to contradict the Government's witness.  This

essentially shifted the burden of proof to Appellee to establish

his innocence -- a violation of protections of the Fifth

Amendment.  Under these circumstances, the comments constituted

error under the first prong of the plain error test.  See

Powell, 49 M.J. at 463.

As noted above, trial counsel repeatedly made the comments

in the context of Appellee's decision not to testify.  In light

of the well-established prohibition against such comments, as

reflected in Mobley, 31 M.J. at 279, and in the Discussion

accompanying R.C.M. 919(b), the error was plain under the second

prong of the plain error test.  See Powell, 49 M.J. at 463.

The third prong of Powell asks whether the error materially

prejudiced Appellee's substantial rights.  49 M.J. at 463-65.

12

In the context of a constitutional error, the burden is on the Government to establish that the comments were harmless beyond a reasonable doubt. Id. at 465 n.*. The Government contends that any error was harmless because the military judge gave curative instructions. See also Carter, ACM 35027, slip op. at 9 (Stone, J., concurring and dissenting). Although the military judge instructed the members that they were not to make adverse inferences from Appellee's decision to remain silent, we agree with the majority opinion below that trial counsel's subsequent rebuttal vitiated any curative effect. Id. slip op. at 6. The rebuttal occurred immediately after the instruction, and trial counsel continued to make improper reference to Appellee's silence by characterizing the evidence as "uncontroverted."

The Government also contends that the impact of any error was not prejudicial because the defense failed to fulfill a promise to put on a defense. See Lockett v. Ohio, 438 U.S. 586, 595 (1978) (finding that the prosecutor's comments that the evidence was unrefuted and uncontroverted were not improper because petitioner's counsel focused the jury's attention on her silence by promising a defense and telling the jury that petitioner would testify); Webb, 38 M.J. at 66 (holding that where defense counsel told the members that the appellant's wife would testify as to the appellant's alibi, but she did not testify, "the prosecutor's closing remarks add little to the

13

impression created after the jury had been promised a defense by appellant's lawyer").

This is not such a case.  The defense in the present case never focused the members' attention on any facts that it planned to present.  Although the defense at one point noted that they intended to present a witness, defense counsel did not inform the members of the identity of the witness or create any expectation as to the substance of the witness's testimony.  Defense counsel's opening statement made it clear that the defense's theory was to question the credibility of the Government's witness.  The opening statement did not refer to evidence or witnesses the defense was going to produce.  Also, during voir dire, defense counsel specifically discussed with the members Appellee's right not to testify and his right not to present any evidence.  See Lent, 861 F.2d at 976 (finding that defense counsel's voir dire testimony prepared the jurors for the petitioner's silence).  Under these circumstances, the Government has not met its burden of establishing that trial counsel's improper comments were harmless beyond a reasonable doubt.

## III. CONCLUSION

The certified question is answered in the negative. The decision of the United States Air Force Court of Criminal Appeals is affirmed.

CRAWFORD, Judge (dissenting):

If there was error in this case, it was not plain error: it neither "affect[ed Appellee's] substantial rights," nor "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997). Any error was harmless because the defense's voir dire, opening statement, and arguments, as well as the court's instructions at numerous points, eliminated any threat of prejudice. United States v. Wharton, 320 F.3d 526, 539 (5th Cir. 2003)(even if the prosecutor's comments concerned the defendant's right to remain silent, the court's instruction eliminated the threat of prejudice); Battenfield v. Gibson, 236 F.3d 1215, 1224-25 (10th Cir. 2001)(comments about defendant's lack of testimony were harmless based on trial court's instructions to jury).

The defense recognized not only on voir dire but also in its opening statement[1] that this case revolves around "the credibility of one witness," and "the issue of consent." During voir dire, both the trial counsel and defense counsel asked the members whether they would draw an improper inference

---

[1] This Court recognized in United States v. Houser, 36 M.J. 392, 400 (C.M.A. 1993), and United States v. Franklin, 35 M.J. 311, 317 (C.M.A. 1992), that an opening statement opens the door for rebuttal. See also United States v. McKeon, 738 F.2d 26 (2d Cir. 1984)(prior opening statement was admissible evidence at second trial).

if Appellee did not testify. The members all replied twice that they would not draw such an adverse inference. During voir dire, the military judge reminded the members that the accused is presumed to be innocent and the defense is not required to introduce any evidence.

After the Government rested, the defense said it had "one witness to call . . . but [needed a] comfort break." There was no mention of calling Appellee as a witness during the trial or at any session pursuant to Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a)(2000), and the record reveals no plan to call him. At the Article 39(a) session after that break, the defense withdrew its plan to call a witness who was a friend of the victim.

Except for the defense comment after the Government rested, everyone from the start of the trial recognized that this trial concerned "one witness," and the members could draw inferences based on the direct and cross-examination of that witness.

During the closing instructions prior to argument, the military judge reminded the members that the accused is presumed innocent and the Government must prove the case beyond a reasonable doubt. He told the members that they must determine the credibility of the witness. He instructed the members a number of times that the burden is upon the Government to prove the case beyond a reasonable doubt and that this burden never

2

shifts to the accused.  Even after the defense argument, the military judge reminded the members not to draw any adverse inferences from the accused's failure to testify.  There were no objections.

If there was error,[2] it was harmless beyond a reasonable doubt.  After their opening statements, both sides had a chance to examine the victim vigorously.  The Government argued that its position was supported by the victim's testimony while the defense argued that her testimony was inconsistent and improbable.  To ensure no improper inferences were drawn from Appellee's failure to testify, the military judge twice informed the members that they were not permitted to infer guilt from the fact that the Appellee did not testify and properly placed the burden on the Government to prove its case beyond a reasonable doubt.  For all of these reasons, I conclude that if there was error in this case, it was harmless beyond a reasonable doubt.  Thus, I respectfully dissent.

---

[2] The prosecution has the right to respond to defense counsel's argument and "right the scale."  United States v. Young, 470 U.S. 1, 13 (1985).  See also United States v. Robinson, 485 U.S. 25, 32 (1988); Darden v. Wainwright, 477 U.S. 168 (1986).